UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AYELEN B. RODRIGUEZ,

                              Plaintiff,

             - against -

VILLAGE OF OSSINING, JOSEPH BURTON,
individually and as a Police Chief, JAMES DROHAN,
individually and as a Police Officer, VILLAGE OF
CROTON-ON-HUDSON, JOHN SMITH, individually
and as a Police Officer, and JOHN DOES 1-10, individually
and as Police Officers,

                              Defendants.
-------------------------------------------------------------------x

**OPINION AND ORDER**

No. 10-CV-3814 (CS)

Appearances:
Carolyn V. Minter
Law Offices of Carolyn V. Minter
Ossining, New York
*Counsel for Plaintiff*

John J. Walsh
Paul E. Svensson
Hodges Walsh & Slater, LLP
White Plains, New York
*Counsel for Defendants Village of Ossining,*
*Village of Ossining Police Department,*
*Joseph Burton, James Drohan, and John Does 1-10*

James A. Randazzo
Gaines, Gruner, Ponzini & Novick LLP
White Plains, New York
*Counsel for Defendants Village of Croton-on-Hudson,*
*Village of Croton-on-Hudson Police Department, and*
*John Smith*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-14-13

Seibel, J.

Before the Court are the Motions for Summary Judgment of Defendants Village of Ossining, Village of Ossining Police Department, Police Chief Joseph Burton, Police Officer James Drohan, and John Does 1-10 (the "Ossining Defendants"), (Doc. 52),[1] and Village of Croton-on-Hudson, Village of Croton-on-Hudson Police Department, and Police Officer John Smith (the "Croton Defendants"), (Doc. 58).[2] For the following reasons, Defendants' Motions are GRANTED.

I. **Background**

 A. Factual Background

As a preliminary matter, the Court's task of determining the undisputed facts in this case was rendered more difficult because Plaintiff failed to submit a response to Defendants' statements of fact pursuant to Local Civil Rule 56.1, as she is required to do. *See* Local Civ. R. 56.1(b). Accordingly, the facts set forth below are drawn from Plaintiff's and Defendants' Local Civil Rule 56.1 statements, and I have noted where I believe there might be disputes as to the material facts.

This case arises from an incident that occurred on October 9, 2008. On that date, Plaintiff, who was approximately twelve weeks pregnant at the time, and her then-boyfriend (now husband) Donte Higgs were at a Dunkin' Donuts in Croton-on-Hudson, New York. (P's

---

[1] This Motion is incorrectly labeled on the Court's Electronic Case Filing system ("ECF") as a Motion to Dismiss.

[2] Plaintiff incorrectly named the Village of Ossining Police Department and the Village of Croton-on-Hudson Police Department as Defendants. In a suit alleging a deprivation of constitutional rights by an agency of a municipality, the municipality is the real party in interest and the proper named party in the action. *See Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012); *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 648 n.1 (S.D.N.Y. 2000). Therefore, "[t]o avoid unnecessary, time consuming motions" regarding this technical error, the Court has amended the caption to remove the improperly named parties because the real parties in interest, the Village of Ossining and the Village of Croton-on-Hudson, are already named Defendants. *Manning v. Cnty. of Westchester*, No. 93-CV-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995).

2

56.1 ¶ 2; Minter Decl. Ex. B.)[3] Defendant James Drohan, an Ossining police officer, was also at the Dunkin' Donuts. (Croton 56.1 ¶ 3.)[4] Drohan was off duty at the time, but he recognized Plaintiff as the subject of outstanding arrest warrants and stepped outside the store to verify the warrants.[5] (*Id.* ¶¶ 3-4; Randazzo Decl. Ex. E.) Plaintiff left the Dunkin' Donuts, walked to a car, entered on the passenger side, and sat down. (P's 56.1 ¶ 4.) Drohan approached the car and asked Plaintiff to get out. (*Id.* ¶ 5; Ossining 56.1 ¶ 3.)[6] Plaintiff complied, and according to Plaintiff's testimony, after she got out of the car, Drohan identified himself as a police officer, told Plaintiff about the bench warrants, and instructed her to put her hands behind her back. (Randazzo Decl. Ex. C, at 28-30.) Also according to Plaintiff, she put her hands behind her back "for a second," but Drohan then got on the phone to call for back-up, so Plaintiff got back in the car, leaving the door open. (*Id.* at 31-32; P's 56.1 ¶ 6.) According to Drohan, he told Plaintiff repeatedly to stay or get out of the car, (Randazzo Decl. Ex. E),[7] and when she refused to comply, Drohan reached into the car and grabbed Plaintiff's jacket in an attempt to get her out of the car to arrest her. (Croton 56.1 ¶ 6; P's 56.1 ¶ 7; Ossining 56.1 ¶ 5.) According to Plaintiff, Higgs told Drohan to let go of her: "[W]hat are you doing? She's pregnant. She's a female. What's wrong with you?" (Randazzo Decl. Ex. C, at 32.) Higgs then got out of the car and "got

---

[3] "P's 56.1" refers to Plaintiff's 56.1 Statement. (Doc. 69.) "Minter Decl." refers to the Declaration of Carolyn V. Minter. (Doc. 68.)

[4] "Croton 56.1" refers to Defendant Village of Croton-on-Hudson, Village of Croton-on-Hudson Police Department, and Police Officer John Smith's Rule 56.1 Statement. (Doc. 61.)

[5] The bench warrants were signed on September 26, 2008 by Judge Raymond Barlaam of the Ossining Village Justice Court after Plaintiff failed to appear at a court conference on September 25, 2008 relating to criminal charges of assault in the third degree, menacing in the second degree, criminal contempt in the second degree, and aggravated harassment in the second degree. (P's 56.1 ¶ 1; Declaration of James A. Randazzo ("Randazzo Decl."), (Doc. 59), Ex. D.) The warrants authorized any police officer in New York state to arrest Plaintiff for her failure to appear in court. (Randazzo Decl. Ex. D.)

[6] "Ossining 56.1" refers to the Statement of Facts of the Ossining Defendants. (Doc. 67.)

[7] The sequence of events as recounted by Drohan differs somewhat from that in Plaintiff's testimony, but the differences are immaterial for purposes of these Motions. (*Compare* Randazzo Decl. Ex. C, at 28-39, *with id.* Ex. E.)

3

in [Drohan's] face," and Drohan, still on the phone, continued to request back-up. (*Id.*) Higgs then got back in the car, and Drohan again grabbed Plaintiff and in so doing, scratched her and ripped her jacket. (*Id.*; P's 56.1 ¶ 7.) Plaintiff continued to refuse to get out of the car and grabbed onto Higgs for leverage. (Ossining 56.1 ¶ 7.) Higgs began to operate the vehicle and move it back and forth in an attempt to get Drohan away from Plaintiff. (P's 56.1 ¶ 8; Ossining 56.1 ¶ 6; Croton 56.1 ¶ 7.)

At that point, two uniformed police officers (including Defendant Smith) from the Village of Croton-on-Hudson arrived in marked police cars. (Croton 56.1 ¶¶ 8-9.) They asked Plaintiff to exit the vehicle and when she complied, according to Plaintiff, the officers "grabbed [P]laintiff, picked her up by both arms and threw her against the car," then handcuffed her and arrested her and Higgs. (P's 56.1 ¶¶ 10-11.) It was not until after Plaintiff was thrown against the car that she told the Croton-on-Hudson officers that she was pregnant. (Randazzo Decl. Ex. C, at 41-42, 104-05.)

Plaintiff was taken to the Croton-on-Hudson Police Department and alleges that on the way, she began complaining about her stomach hurting. (Croton 56.1 ¶ 12; P's 56.1 ¶ 10.) She was charged with resisting arrest,[8] and after about forty-five minutes, she was taken to the Ossining police department for processing. (P's 56.1 ¶ 11; Croton 56.1 ¶ 13.) Plaintiff told officers at the Ossining police department that she was cold, dizzy, and bleeding, and within twenty minutes, they made arrangements for her to be transported to Phelps Memorial Hospital. (P's 56.1 ¶ 12; Ossining 56.1 ¶ 11.)

---

[8] Plaintiff ultimately pleaded guilty to disorderly conduct to satisfy the charge. (Croton 56.1 ¶ 14; Randazzo Decl. Ex. G.)

4

Plaintiff claims that the actions of Defendants during the incident in question caused her to have a miscarriage. (AC ¶ 34.)[9] In support of this allegation, Plaintiff submitted medical records from October 9-10, 2008, following her arrest. Her ultrasound report indicates "[n]o fetal cardiac motion detected" and that the findings were "comparable with fetal demise." (Minter Decl. Ex. A.) On the medical intake questionnaire, however, Plaintiff checked that she had not been injured recently and had no injuries at that time. (*Id.* Ex. B.) Defendants point out that Plaintiff has submitted no medical testimony connecting her miscarriage with the events surrounding her arrest, and that Plaintiff concedes that her prenatal care provider was unable to detect the fetus' heartbeat before her arrest. (*See* Croton Reply Mem. 1-2; Ossining Supp. Mem. 2-3; Walsh Aff. Ex. D.)[10]

B.     Procedural History

Plaintiff filed her Complaint in this action on May 10, 2010. (Doc. 1.) By letter dated July 27, 2010, the County of Westchester and County of Westchester Corrections Department – originally Defendants in this action – requested a pre-motion conference in anticipation of filing a motion to dismiss. (Doc. 11.) At the pre-motion conference on September 10, 2010, I granted Plaintiff leave to amend her Complaint and set a briefing schedule for the motion to dismiss. (Minute Entry Sept. 10, 2010.) Plaintiff filed her AC on October 15, 2010, (Doc. 26), asserting against the Ossining and Croton Defendants excessive force and false arrest and imprisonment

---

[9] "AC" refers to Plaintiff's Amended Complaint. (Doc. 26.) This document is incorrectly labeled on ECF as an Amended Counterclaim.

[10] "Croton Reply Mem." refers to Reply Memorandum of Law in Support of Motion by Village of Croton-on-Hudson, Village of Croton-on-Hudson Police Department and Police Officer John Smith for Summary Judgment. (Doc. 62.) "Ossining Supp. Mem." refers to Supplemental Memorandum of Law Submitted on Behalf of the Village of Ossining in Support of its Motion for Summary Judgment. (Doc. 57.) I will assume that this supplemental memorandum is intended to serve as the Ossining Defendants' Reply Memorandum. "Walsh Aff." refers to the Affirmation of John J. Walsh. (Doc. 70.) It was originally filed without Exhibit D, (Doc. 56), at the time the Ossining Defendants' Supplemental Memorandum was filed, and was re-filed correctly at my chambers' request.

claims[11] pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution under 42 U.S.C. § 1983 ("Section 1983"), and state-law claims of assault, battery, and negligence.[12] (*See* P's Mem. 3; Croton Mem. i-ii; Ossining Mem. 2.)[13] Plaintiff's claims against the Village of Ossining and Village of Croton-on-Hudson appear to be predicated on theories of deliberate indifference and failure to train or supervise.

On July 29, 2011, I granted the County of Westchester and County of Westchester Corrections Department's Motion and dismissed them as Defendants.[14] (Minute Entry July 29, 2011.) On May 9, 2012, the Ossining Defendants and Croton Defendants moved for summary judgment as to all claims. (Docs. 52, 58.)

---

[11] At a court conference on January 31, 2012, Plaintiff withdrew her false arrest claim. By letter dated February 2, 2012, Plaintiff clarified that she still wished to pursue this claim against the Croton Defendants. (Doc. 50.)

[12] Plaintiff also mentions a purported due process violation in the AC. (*See, e.g.*, AC ¶¶ 2, 51-52, 58, 62-63, 69.) It is not clear whether Plaintiff believes she suffered a violation of procedural or substantive due process, but in any event, there are no facts in the AC, nor allegations in Plaintiff's motion papers, that would come close to supporting a claim for a due process violation against the remaining Defendants. To the extent Plaintiff's purported due process claim is premised on the use of force by police officers, that claim is properly brought as one for excessive force under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*[A]ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original). Therefore, to the extent Plaintiff intended to assert a due process claim, that claim is dismissed.

[13] "P's Mem." refers to Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment. (Doc. 68.) "Croton Mem." refers to Memorandum of Law in Support of Motion by Village of Croton-on-Hudson, Village of Croton-on-Hudson Police Department, and Police Officer John Smith for Summary Judgment. (Doc. 60.) "Ossining Mem." refers to Memorandum of Law Submitted on Behalf of the Village of Ossining in Support of its Motion for Summary Judgment. (Doc. 55.)

[14] The County of Westchester and County of Westchester Corrections Department did not bring the Motion on behalf of the John Doe corrections officers. Plaintiff, however, has not identified the John Doe corrections officers and does not appear to be pursuing claims against them. For that reason and for the reasons stated in my ruling dismissing the County of Westchester and County of Westchester Corrections Department as Defendants, the John Doe corrections officers are dismissed as Defendants.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

7

those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

B. Procedural Deficiencies

As noted previously, Plaintiff failed to comply with the Local Civil Rule requiring her to respond to Defendants' 56.1 statements. This is inexcusable on the part of a represented Plaintiff, and her counsel is hereby advised that any similar derelictions in the future will result in application of Local Civil Rule 56.1(c) and/or Federal Rule of Civil Procedure 56(e)(2), (3). In the interest of resolving this dispute on the merits, however, and because Plaintiff submitted her own 56.1 statement and the facts of this case are "easily discerned from the . . . record," I will overlook this omission and rule on the Motions after conducting an "assiduous review" of the record. *Johnson v. UJA Fed'n of N.Y.*, No. 10-CV-5648, 2012 WL 928213, at *1 (E.D.N.Y. Mar. 19, 2012); *see Kirkland v. Cablevision Sys.*, No. 09-CV-10235, 2011 WL 4908367, at *6 n.2 (S.D.N.Y. Oct. 14, 2011), *Report and Recommendation adopted*, 2012 WL 4513499 (S.D.N.Y. Sept. 30, 2012).

C.  Federal Claim against the Ossining Defendants

The only federal claim Plaintiff asserts against the Ossining Defendants is a claim for excessive force pursuant to the Fourth Amendment. Plaintiff alleges that Drohan and unnamed officers used excessive force against her, and that Joseph Burton, the Ossining police chief, and the Village of Ossining are liable under a failure to train or supervise theory of municipal liability. (AC ¶¶ 8, 40, 54-55.)

1.  Excessive Force – Drohan and John Does

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). "A claim that excessive force was used in the course of a seizure is subject to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). "Additionally, on an excessive force claim a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable. A *de minimis* use of force will rarely suffice to state a Constitutional claim." *Sachs v. Cantwell*, No. 10-CV-1663, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012) (citation and internal quotation marks omitted); *see Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) ("Borrowing from the 'objective' component of the Eighth Amendment test for excessiveness and the Supreme Court's observation that 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment,' the

9

Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed.") (alteration omitted) (quoting *Graham*, 490 U.S. at 396).

Viewing the facts in the light most favorable to Plaintiff and accepting as true all of her testimony as set forth in her Examination pursuant to Section 50-h of the General Municipal Law of New York, (*see* Randazzo Decl. Ex. C), I find that Drohan did not use excessive force when he grabbed Plaintiff's arm to try to remove her from the vehicle to arrest her. First, Plaintiff does not dispute that Drohan had probable cause to arrest her pursuant to the outstanding bench warrants, (*see* Randazzo Decl. Ex. H), and therefore "implicitly concedes that [the arresting officer] was authorized to use some degree of force or the threat thereof to effect th[e] arrest," *Jennejahn v. Vill. of Avon*, 575 F. Supp. 2d 473, 478 (W.D.N.Y. 2008); *see Chandler v. Clark*, No. 09-CV-60, 2009 WL 2916687, at *8 (D. Vt. Sept. 9, 2009). That implicit concession, coupled with Plaintiff's refusal to comply with Drohan's order to stand outside the car with her hands behind her back, (*see* Randazzo Decl. Ex. C, at 31), and Higgs's apparent threatening of Drohan, (*id.* at 32), made it objectively reasonable for Drohan to believe that grabbing Plaintiff's arm to remove her from the car was necessary to effect her arrest.

Moreover, the undisputed facts indicate that Drohan's use of force was *de minimis* and therefore not actionable. There are no allegations that Drohan hurt Plaintiff in any way besides scratching her, (*id.* at 32), and that scratch is not alleged to have been even remotely painful or serious. Indeed, Plaintiff reported on a medical form the next day that she had not been injured recently. (Minter Decl. Ex. B.) Accordingly, I find that the force used by Drohan was *de minimis* and not "'objectively sufficiently serious or harmful,'" *Jennejahn*, 575 F. Supp. 2d at 478 (quoting *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999)), to be actionable, *see*

*Lemmo*, 2011 WL 843974, at *5 ("Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness[,] . . . minor discomfort[,] . . . and two superficial scratches with a cut inside the mouth."); *Jennejahn*, 575 F. Supp. 2d at 476, 481 (assertions about arresting officer's conduct – that officer "violently grabbed [plaintiff's] arm, spun him around, released his arm and forcefully grabbed his shoulders" – "coupled with the absence of any injuries therefrom," are insufficient to withstand summary judgment); *see also Phelps v. Szubinski*, 577 F. Supp. 2d 650, 661-62 (E.D.N.Y. 2008) (collecting cases where force used was *de minimis*).

Finally, because there are no allegations that anyone else from Ossining touched Plaintiff or witnessed Drohan's use of force, this claim is also dismissed as to any John Does.

### 2. Municipal Liability

Because Plaintiff's claim of excessive force fails, so too does her claim alleging that the force used was authorized by the Village of Ossining's policies and procedures or caused by its failure to supervise or train its employees. *See Jennejahn*, 575 F. Supp. 2d at 481. Accordingly, summary judgment is granted as to all of Plaintiff's federal claims against the Ossining Defendants.

### D. Federal Claims against the Croton Defendants

### 1. Abandoned Claims

Plaintiff has not opposed the Croton Defendants' assertion of qualified immunity and on that ground alone, the claims against Smith are properly dismissed.[15] *See Rodriguez v. City of*

---

[15] Smith was sued in both his individual and official capacities, but qualified immunity only applies to the suit against him in his individual capacity; "'an official sued in his official capacity may not take advantage of a qualified immunity defense.'" *Caban v. City of N.Y.*, No. 11-CV-3417, 2012 WL 5992088, at *6 (S.D.N.Y. Nov. 30, 2012) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 556 n.10 (1985) (Brennan, J., concurring in part and dissenting in part)). To the extent Smith was sued in his official capacity, that suit should be dismissed for the reasons described in Part II.D.4 below, because the municipal entity is the real party in interest, and "thus 'a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.'"

*N.Y.*, No. 08-CV-4173, 2012 WL 1059415, at *13 (E.D.N.Y. Mar. 28, 2012) (Section 1983 claim deemed abandoned where plaintiff failed to address defendants' argument regarding that claim); *Davis v. City of N.Y. Health & Hosps. Corp.*, No. 08-CV-435, 2011 WL 4526135, at *6 (S.D.N.Y. Sept. 29, 2011) (claims against individual defendant abandoned on qualified immunity grounds because plaintiff did not submit opposition to defendant's motion to dismiss based on qualified immunity); *Boykins v. Cmty. Dev. Corp. of Long Island*, No. 10-CV-3788, 2011 WL 1059183, at *7 (E.D.N.Y. Mar. 21, 2011) (claims dismissed as abandoned because plaintiff did not challenge defendants' qualified immunity arguments); *see also Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (claims abandoned where plaintiff did not raise any arguments opposing defendants' motion to dismiss) (collecting cases); *Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03-CV-6614, 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (summary judgment on discrimination claim granted where plaintiff did not oppose defendant's motion as to that claim). Even if Plaintiff's claims were not abandoned, however, they would fail on the merits, as discussed below.

### 2. False Arrest and Imprisonment

Plaintiff's false arrest claim[16] must be analyzed under the law of the state in which the arrest occurred. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, to prevail on a false arrest claim, a plaintiff must demonstrate that (1) the defendant intentionally confined her, (2) the plaintiff was aware of being confined, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not justified or otherwise privileged.

---

*Phillips v. Cnty. of Orange*, No. 10-CV-239, 2012 WL 4108113, at *27 n.35 (S.D.N.Y. Sept. 11, 2012) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

[16] "In this Circuit, courts analyze false arrest and false imprisonment claims identically." *Michaels v. City of N.Y.*, No. 10-CV-2666, 2011 WL 570125, at *5 (S.D.N.Y. Feb. 16, 2011). Accordingly, I refer to Plaintiff's claim as one for "false arrest," but the analysis applies equally to her false imprisonment claim.

12

*See Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003). In this case, the parties dispute only the last element of Plaintiff's false arrest claim – namely, whether there was a justification or privilege for her arrests.

An arrest is justified or privileged if it is based on probable cause. *LaFontaine v. City of N.Y.*, No. 08-CV-1555, 2009 WL 3335362, at *5 (S.D.N.Y. Oct. 14, 2009); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Probable cause exists when an officer has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jocks*, 316 F.3d at 135 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *accord Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979). The focus is not on the arresting officer's certitude, but rather on the likelihood of criminal activity. *See Illinois v. Gates*, 462 U.S. 213, 231 (1983); *LaFontaine*, 2009 WL 3335362, at *5. "[P]robable cause is evaluated under an objective standard," *Michaels*, 2011 WL 570125, at *5 (internal quotation marks omitted), under which "courts look to the information available to the law enforcement officer at the time of the arrest and consider the 'totality of the circumstances,'" *id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *accord Gates*, 462 U.S. at 230-31. The basis for probable cause can be information about the commission of a crime received from another person, *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *LaFontaine*, 2009 WL 3335362, at *5, and once a law enforcement officer "has a reasonable basis for believing there is probable cause" to arrest a suspect, "he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see Krause v. Bennett*, 887 F.2d 362, 372

(2d Cir. 1989) (law enforcement officers are tasked with "apprehend[ing] those suspected of wrongdoing" – not engaging in "a weighing of the evidence").

Finally, because probable cause is evaluated under an objective standard, it need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer," and "the 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The focus is simply on "the validity of the *arrest*, and not on the validity of each charge." *Id.* at 154 (emphasis in original). Thus, as long as the Defendant officers had probable cause to arrest Plaintiff for any crime, the arrests were privileged and cannot form the basis for a false arrest claim under Section 1983.

Plaintiff's false arrest claim fails for several reasons. First, probable cause existed for Plaintiff's arrest by virtue of the bench warrants. That the Croton-on-Hudson officers ultimately charged Plaintiff with resisting arrest is irrelevant. Second, it appears that the Croton-on-Hudson officers also had probable cause to arrest Plaintiff for resisting arrest. There is no dispute that Drohan attempted to arrest Plaintiff but that Plaintiff resisted by getting back in the vehicle and refusing to comply with his orders. Drohan called for back-up, and according to Plaintiff, the Croton-on-Hudson officers arrived on the scene during the midst of Drohan's struggle with Plaintiff; they therefore would have witnessed the events that would easily give rise to probable cause for resisting arrest. (*See* Randazzo Decl. Ex. C, at 38.)

Plaintiff's claim fails as a matter of law for yet another reason: she pleaded guilty to disorderly conduct to resolve the charge of resisting arrest. (*See* Randazzo Decl. Ex. G.) *See Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996) (plaintiff cannot challenge validity of arrest

under Section 1983 after guilty plea); *Masetta v. Town of Irondequoit*, No. 06-CV-6143, 2010 WL 4823684, at *4 (W.D.N.Y. Nov. 29, 2010) (dismissing plaintiff's false arrest claim where plaintiff was arrested for resisting arrest and pleaded guilty to disorderly conduct because guilty plea established probable cause as matter of law); *Sealey v. Fishkin*, No. 96-CV-6303, 1998 WL 1021470, at *4 (E.D.N.Y. Dec. 2, 1998) (plea of guilty to lesser offense of disorderly conduct forecloses false arrest claim pursuant to Section 1983 because "[b]y pleading guilty to disorderly conduct, plaintiff necessarily acknowledged that [s]he was engaged in some unlawful activity for which the police could properly take [her] into custody"). Accordingly, Plaintiff's false arrest claim is dismissed.[17]

        3.     <u>Excessive Force</u>

Plaintiff claims that Defendant Smith used excessive force against her when he and another officer grabbed Plaintiff's arms, picked her up, and threw her against the car. (Randazzo Decl. Ex. C, at 39-40.) Even if Plaintiff had not abandoned this claim by failing to oppose Smith's assertion of qualified immunity, Smith would plainly be entitled to qualified immunity.[18]

"The doctrine of qualified immunity shields public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law, or (2) where . . . the plaintiff's right not to be subjected to such conduct . . . was not clearly established at the time it occurred, or (3) if the defendant's action was

---

[17] Because Plaintiff's false arrest claim fails for all the reasons stated above, I need not consider whether Defendant Smith is entitled to qualified immunity with respect to that claim. It appears, however, that he would be, because as stated above, there surely was at least "arguable probable cause" for arresting Plaintiff pursuant to the bench warrants and for resisting arrest. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007).

[18] This claim might also fail on the merits based on the *de minimis* nature of the force, but I need not reach that issue.

15

> objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (alterations, citations, and internal quotation marks omitted). Thus, qualified immunity provides protection to police officers faced with an excessive force claim unless the officers (1) "violated a constitutional right (2) that was clearly established at the time of the alleged violation." *Hodge v. City of Long Beach*, 425 F. App'x 33, 34 (2d Cir. 2011) (internal quotation marks omitted).

Putting aside for a moment Plaintiff's allegations that Smith's conduct caused her to have a miscarriage, it appears that Smith's actions were objectively legally reasonable. Smith had probable cause to arrest Plaintiff, such that the use of some force was reasonable. Furthermore, given the Supreme Court's adage that not every push or shove constitutes excessive force, *see Graham*, 490 U.S. at 396, the case law holding more extreme uses of force to be *de minimis*, *see Phelps*, 577 F. Supp. 2d at 661-62, and the fact that Plaintiff sustained no injuries apart from her alleged miscarriage, it appears that the use of force here was not "'objectively sufficiently serious or harmful enough' to be actionable," *Rincon v. City of N.Y.*, No. 03-CV-8276, 2005 WL 646080, at *4-5 (S.D.N.Y. Mar. 21, 2005) (quoting *Walsh*, 194 F.3d at 50) (where officers threw plaintiff to the ground and plaintiff claimed stitches in her leg split open causing her to bleed, force used was *de minimis*). Smith's actions – controlling an arrestee, who moments earlier had been resisting, by throwing her against a car to handcuff her – are not so clearly prohibited as to take him beyond the protections of qualified immunity. Accordingly, as applied to a non-pregnant woman, Smith's conduct would be shielded by qualified immunity.

The question, therefore (had Plaintiff not abandoned her claim), is whether Smith's actions were not objectively reasonable because Plaintiff was pregnant. The answer is no, because by Plaintiff's account, Smith did not know she was pregnant at the time he threw her

against the car. (*See* Randazzo Decl. Ex. C, at 41-42, 104-05.) Therefore, at the time that Smith effectuated Plaintiff's arrest, (*id.* at 104), he apparently did not know he was pushing a pregnant woman, and therefore cannot be said to have acted unreasonably in using the minimal amount of force he employed. Moreover, assuming that a reasonable officer ought to calibrate his use of force, when arresting a young woman, to account for the possibility of pregnancy, forcibly putting an arrestee against a car after she refused to comply with one officer and her companion tried to forcibly shake that officer from the car, is not inconsistent with that obligation. Indeed, the record is bereft of evidence that the officer's conduct injured or could have injured Plaintiff or her unborn child.[19] In a "'tense'" and "'rapidly evolving'" situation such as that confronted by the Croton-on-Hudson officers, *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (quoting *Graham*, 490 U.S. at 397), qualified immunity is particularly appropriate, given that officers' judgment calls are not to be second-guessed in the "'peace of a judge's chambers,'" *McCart v. Vill. of Mount Morris*, No. 09-CV-6472, 2011 WL 3421505, at *11 (W.D.N.Y. Aug. 4, 2011) (quoting *Graham*, 490 U.S. at 396).

### 4. Municipal Liability

Finally, Plaintiff's claim against the Village of Croton-on-Hudson and Smith in his official capacity fails because it is abandoned. The Croton Defendants assert in their Memorandum of Law that Plaintiff has failed to plead the existence of a municipal custom, policy, or practice which caused the deprivation of her constitutional rights and instead has alleged only "a single, isolated incident of police misconduct." (Croton Mem. 12-13.) Plaintiff did not address this argument in her opposition brief. Thus, the Court deems her Section 1983

---

[19] I sympathize with the anguish Plaintiff and her husband must have experienced upon the loss of the pregnancy, and can understand why they might associate it with Plaintiff's arrest. But there is no record evidence connecting the two events.

17

claim against the Village of Croton-on-Hudson and Smith abandoned.[20] *See DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 196 (S.D.N.Y. 2012) (claim against municipality and individual defendant in official capacity abandoned where "[p]laintiff ha[d] not opposed Defendant's Motion with regard to municipal liability under § 1983"); *Parrilla v. City of N.Y.*, No. 09-CV-8314, 2011 WL 611849, at *1 n.4 (S.D.N.Y. Feb. 16, 2011) (plaintiff abandoned Section 1983 claim on summary judgment by failing to oppose defendants' arguments regarding municipal liability). Accordingly, summary judgment is granted as to all of Plaintiff's federal claims against the Croton Defendants.

E. State Law Claims

Having dismissed all of Plaintiff's federal causes of action, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

---

[20] Even if Plaintiff had not abandoned her claim, the claim would fail on the merits because Plaintiff has not set forth any facts suggesting that the Croton Defendants acted pursuant to a municipal policy or custom, that the Village of Croton-on-Hudson's training or supervision of its officers was inadequate, or how any such inadequacies may have caused the alleged constitutional violations. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (identified deficiency in training program must be "closely related to the ultimate injury" for municipal liability to attach); *Wray v. City of N.Y.*, 490 F.3d 189, 196 (2d Cir. 2007) (plaintiff must identify specific deficiency in training program, establish that it caused constitutional violation, and show that inadequacy resulted from deliberate indifference); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128-31 (2d Cir. 2004) (same).

### III. Conclusion

For the reasons stated above, Defendants' Motions for Summary Judgment are GRANTED. Plaintiff's federal claims are dismissed with prejudice, and her state-law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending Motions, (Docs. 52, 58), and close the case.

**SO ORDERED.**

Dated: January 14, 2013
White Plains, New York

_Cathy Seibel_
CATHY SEIBEL, U.S.D.J.